UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | 3:11-CR-139-WWE |
| | : | |
| ALBERT LOPEZ | : | |

**<u>MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS</u>**

Defendant, Albert Lopez, has moved to suppress a firearm found by a state trooper during a traffic stop. Specifically, defendant argues that the trooper lacked a sufficient basis to stop him, to remove him from his car, to detain him, and to pat him down.

For the following reasons, defendant's motion will be denied.

**<u>BACKGROUND</u>**

The parties have submitted briefs and exhibits, including an audio/video DVD recorded from the primary responding officer's dashboard camera. The Court held an evidentiary hearing on this motion to suppress at which both responding officers testified.

On April 2, 2011, a Connecticut state police officer caused defendant to pull over his vehicle to the side of Interstate 91, while traveling northbound in the greater Hartford area. As recorded from a camera located in the vehicle driven by the arresting officer, the officer engaged defendant while in his vehicle, directed him to step out of the vehicle, and questioned him behind defendant's vehicle. Eventually, the officer searched defendant and discovered a firearm.

Initially, the trooper informed defendant that he had been stopped because defendant's vehicle was drifting into an adjacent lane. Defendant responded promptly that one of his contact lenses was bothering him.

1

The trooper then asked defendant to step to the rear of the vehicle after having seen two cell phones and an air freshener in the car, which the trooper identified as "several indicators of criminal activity." The trooper also noted that defendant's breath was both shallow and rapid but with "an occasional deep sigh," and that his hands shook in passing his driver's license and registration. As defendant exited his car, he turned his back to the officer while raising his arms in expectation of a pat-down. After the officer declined the invitation, defendant complied with the request to go to the rear of the vehicle.

At the rear of the vehicle, the trooper questioned defendant regarding his destination. Defendant responded that he was traveling to Springfield to meet a friend, whom he would call for exact directions when he was approaching Springfield. During approximately five minutes of questioning, the trooper eventually asked whether defendant had any handguns, shotguns, or drugs inside the vehicle. Defendant responded in the negative to all such questions, and responded, "Go ahead," when asked if the trooper could search his car.

After obtaining permission to search defendant's vehicle, the trooper asked to pat defendant down. Defendant responded, "I don't know why you're giving me a hard time sir." The trooper denied that he was giving defendant a hard time and informed him that safety was his primary object. Defendant then turned and raised his arms. The officer began to pat-down defendant's lower back and immediately felt a hard object, discovered to be a loaded handgun.

## **DISCUSSION**

Defendant moves to suppress the firearm seized from his person because he claims the trooper lacked a sufficient basis (1) to stop him; (2) to remove him from his car; (3) to detain him; and (4) to pat him down. Each of these claims fail.

2

The touchstone of the Fourth Amendment is reasonableness. Florida v. Jimeno, 500 U.S. 248, 250 (1991). Reasonableness is measured in objective terms, by examining the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 39 (1996).

**The Stop**

Reasonable suspicion of a traffic violation provides a sufficient basis for a traffic stop. U.S. v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009). Here, the responding officer viewed defendant's vehicle cross into an adjacent lane in violation of Conn. Gen. Stat. § 14-236. Defendant's ready explanation that he was distracted by his contact lens corroborates the officer's observation. Thus, the traffic stop was lawful.

**The Removal**

"[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms, 434 U.S. 106, 111 n. 6 (1977). Therefore, the officers had a sufficient basis to remove defendant from his car.

**The Detention**

"An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Arizona v. Johnson, 55 U.S. 323, 333 (2009). Here, defendant was questioned behind his vehicle for less than five minutes before the officer requested permission to pat him down.

The question is whether the trooper's questions measurably extended the duration of the stop such that the stop became unconstitutional. In U.S. v. Harrison, the Second Circuit held that

additional questioning during a time-span of five to six minutes between a stop and an arrest did not prolong the stop so as to render it unconstitutional. 606 F.3d 42, 45 (2d Cir. 2010). Longer intervals have been deemed tolerable by other Circuits. See, e.g., United States v. Turvin, 517 F.3d 1097, 1103-04 (9th Cir. 2008) (14 minutes); United States v. Hernandez, 418 F.3d 1206, 1212 n. 7 (11th Cir. 2005) (17 minutes). Therefore, defendant's detention in this case, with questioning similar in length to that in Harrison, was lawful.

**The Pat-Down Search**

The touchstone of the Fourth Amendment is reasonableness. Katz v. United States, 389 U.S. 347, 360 (1967). The Fourth Amendment proscribes searches which are unreasonable. Courts have long approved consensual searches because it is reasonable for the police to conduct a search once they have been permitted to do so. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The Fourth Amendment test for a valid consent to search is that the consent be voluntary. "Voluntariness is a question of fact to be determined from all the circumstances." Id. at 248-49.

While knowledge of the right to refuse a search is taken into account when assessing the voluntariness of the consent, the Government need not establish such knowledge as the *sine qua non* of an effective consent. U.S. v. Drayton, 536 U.S. 194, 195 (2002). Here, it could be logically argued that defendant lacked knowledge of his right to refuse the frisk because consent to a pat-down was extremely likely to result in his arrest. In other words, no rational gun-toting-felon would consent to a search if they understood their consent to be optional. However, this argument is called into question by the fact that defendant, absent any prompt or direction, offered himself up to be frisked immediately upon exiting his vehicle. That is to say, no rational

4

gun-toting-felon would offer himself up for search without prompt - but defendant did so.

Importantly, the test of voluntariness is neither subjective nor retrospective. Rather, "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251. Here, defendant was neither arrested nor handcuffed prior to the pat-down, and at no time did officers brandish weapons or intimidate or threaten defendant. The state trooper's tone was conversational as he asked defendant questions about his travel plans and whether he had firearms or drugs on his person. The trooper asked defendant for permission to search him. When defendant hesitated and asked, "Why are you giving me a hard time," the officer explained that he was not giving him a hard time, and that he was just seeking to pat him down for safety reasons. Defendant then voluntarily raised his arms above his head and allowed the state trooper to pat him down. As the pat-down search was consensual, defendant's rights were not violated. Therefore, the firearm found by the officer during the pat-down will not be suppressed.

**Adverse Inference**

Shortly after defendant had been stopped at the side of the road by the primary responding officer, a second officer arrived on the scene. This second officer parked his police car behind that of the first officer. Defendant has requested an adverse inference from the fact that the second officer's dashboard video was destroyed after the issuance of a subpoena which called for "all documents, video, and audio recordings concerning the arrest and/or detention of the Defendant." The second officer does not recall whether his dash camera was recording during the stop.

5

The Court finds that the evidence at issue would not have any exculpatory value because the audio and video evidence provided by the primary officer's recording was clear. Furthermore, the second officer's recordings would have been taken from a more distant and partially obstructed viewpoint. Video and audio from a different, and likely worse vantage point would not be material to whether the stop, removal, detention, and pat-down of defendant were permissible.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to suppress is DENIED.

Dated this 6th day of August, 2012 at Bridgeport, Connecticut.

_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

6